Gmail

FILED          Wilkes-Barre, PA.
June 21, 2022
Leticia Couttien <lcouttien@gmail.com>
Clerk, U.S. Bankruptcy Court

## Fwd: Settlement Negotiations - Couttien v. Colbert & Harris Docket # 1171-CIV-2013

**Elizabeth Anderson <andrson@ptd.net>**                                         Fri, Sep 4, 2020 at 11:54 AM
To: Leticia Couttien <lcoutt38@icloud.com>, Leticia Couttien <LCOUTTIEN@gmail.com>



---------- Forwarded message ---------
From: **Hal H. Harris** <hhh@harris3.com>
Date: Fri, Sep 4, 2020 at 11:53 AM
Subject: Settlement Negotiations - Couttien v. Colbert & Harris Docket # 1171-CIV-2013
To: Elizabeth Anderson <andrson@ptd.net>
Cc: <hhh@harris3.com>


Attorney Anderson,


As You are aware, Superior Court's August 12, 2020 Order Quashed our appeal of the Court of Common Pleas May 8th, 2020 Order, that denied *Defendants' Motion To Add A Party And Add* Counterclaims, was a non-final Order. Thus, the matter can proceed to trial with our right to appeal the Trial Court May 8th, 2020 Order having been properly preserved.


At this point, we seek to engage in serious settlement negotiations to resolve this matter. To this end we, we propose your client, Leticia Couttien, pay us two hundred and fifty thousand dollars ($250,000) to resolve all of our counterclaims against in full. Kindly be advised, your failure to respond with a written counter-offer to our above settlement offer by the end of business (5 P.M. EST) on **Friday, September 11th, 2020** shall be deemed a rejection of our settlement offer.


This settlement offer is made as a part of settlement discussions and does not reflect what we will seek at trial and cannot be used in any manner during the trial. Mr. Colbert joins in the offer and is being provided a copy of this email.


I Remain,


## Hal H. Harris

**T:** (570) 213-3648

**E: hhh@harris3.com**

Signature Below Certifies
This A Duplicate Original:

_Hal H. Harris_, Plaintiff

2021 SEP -9 AM 9:27

PIKE COUNTY
SHERIFF'S OFFICE

## COURT OF COMMON PLEAS FOR PIKE COUNTY, PENNSYLVANIA
### CIVIL DIVISION

| | | |
|---|---|---|
| HAL H. HARRIS AND | : | |
| TERRENCE A. COLBERT, | : | |
| PLAINTIFFS | : | Docket No: 1241 , 2019 |
| | : | |
| V. | : | |
| | : | **JURY TRIAL DEMANDED** |
| JORDAN VICTORIA COUTTIEN AND | : | |
| LETICIA ROMAIN COUTTIEN, | : | |
| | : | |
| DEFENDANTS | : | |

### NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Notice and Complaint are served by entering a written appearance by you or an attorney and filing, in writing, with The Court, your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and judgement may be entered against you by The Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by Hal. You may lose money, property or other rights important to you.

YOU SHOULD TAKE THE PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELPHONE THE OFFICES SET FORTH BELOW. THAT OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THAT OFFICE MAY BE ABLE TO PROVIDE YOU WITH INOFMRATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICE TO ELIGIBLE PERSONS AT A REDUCED RATE OR FEE.

North Penn Legal Services
10 North Tenth Street
Stroudsburg, PA 18360
Phone: (570) 424-5338

Pennsylvania Lawyer Referral Service

(800) 692-7375

Signature Below Certifies
This A Duplicate Original:

_Hal H. Harris_, Plaintiff

OFFICE OF
PROTHONOTARY
CLERK OF COURTS

2019 SEP 23 PM 3: 21

ENTERED FOR RECORD
PIKE COUNTY, PA

# COURT OF COMMON PLEAS FOR PIKE COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | |
|---|---|
| HAL H. HARRIS AND TERRENCE A. COLBERT, **PLAINTIFFS** | : : : Docket No: **1241**, 2019 : |
| V. | : : **JURY TRIAL DEMANDED** |
| JORDAN VICTORIA COUTTIEN AND LETICIA ROMAIN COUTTIEN, **DEFENDANTS** | : : : : |

OFFICE OF
PROTHONOTARY
CLERK OF COURTS
ENTERED FOR RECORD
PIKE COUNTY, PA
2019 SEP 23 PM 3: 20

## COMPLAINT

AND NOW, comes Plaintiffs, Hal H. Harris and Terrence A. Colbert to file the within

Complaint and in support thereof avers as follows;

## INTRODUCTION

1. Hal Harris and Terrence Colbert ("Terrence") collectively referred to hereinafter as "The
   Plaintiffs" bring this action to seek relief for the violations of law and tortious actions
   committed against them and by Leticia Couttien ("Leticia") and Jordan Couttien ("Jordan"),
   collectively referred to hereinafter as "The Defendants", including Malicious Prosecution,
   Malicious Use Of Process/Wrongful Use Of Civil Proceeding, Abuse Of Process, Civil
   Conspiracy, Fraud and Intentional Infliction Of Emotional Distress.

2. As described herein The Plaintiffs were victims of a malicious scheme carried out by The Defendants that resulted in The Plaintiffs suffering in various ways including but not limited to 1) destruction of Hal's reputation 2) Hal's eviction from his home 3) suspension of Hal's visitation with his daughter 4) The Plaintiffs' loss of business assets and clients 5) placement of Hal's name on the Pennsylvania's Child Abuse Registry 6) Hal's removal from various professional organizations 7) theft of The Plaintiffs' personal property by Leticia 8) The Plaintiffs' loss of income and ultimately the loss of Real Property 9) Plaintiffs' deprivation of the use of their personal property and the ultimate theft of that personal property by Leticia 10) harassment and threats to Hal by strangers 11) government withholding Hal's real estate broker's licenses 12) Terrence's injury to Terrence Credit rating and ability to borrow funds 13) the unjust arrest and criminal prosecution of Hal and 14) infliction of Emotional Distress.

## PARTIES

3. Hal H. Harris is an adult individual residing in Pike County, Pennsylvania ("PA"), 18324.

4. Terrence A. Colbert is an adult individual residing in New York County, New York.

5. Leticia Romain Couttien is an adult individual residing in Pike County, PA

6. Jordan Victoria Couttien is an adult individual residing in Pike County, PA

## JURISDICTION & VENUE

7. Jurisdiction is proper pursuant to 42 Pa. C.S. 931(a). Venue is proper in Pike County pursuant to Pennsylvania Rules Of Civil Procedure 1006 (a)(1) because Hal and Defendants all reside in Pike County, Pennsylvania ("PA"), the county where the causes of actions occurred.

## FACTUAL BACKGROUND

8. In January 2004, Hal and Leticia met in New York City ("NYC") at the dance school where their respective daughters were taking ballet lessons. When Leticia and Hal met; Leticia was the mother of one child (Jordan) she worked as a caterer and Hal 1) was father of three children 2) CEO/Chairman of a financial institution 2) had owned a real estate brokerage company and prepared income taxes for over 20 years 3) was a corporate officer in numerous real estate development companies and other businesses 4) served as a Director on the Board of numerous organizations and 5) was a respected member of various civic and non-profit organizations.

9. In June 2004, at Leticia's request, The Defendants began living with Hal in his four-bedroom, two-bathroom apartment on 5th Avenue in NYC. When The Defendants moved into Hal's apartment they joined Hal's twin sons and daughter who already lived with him.

10. Prior to moving in and living with Hal, The Defendants had lived with Leticia's mother, sister and niece in a small two-bedroom apartment in the Bronx, NYC.

11. In the summer of 2004, at Leticia's request, Hal paid for Jordan (who was 8 years old) to fly to and visit her biological father and Leticia's aunt in Trinidad, for two weeks.

12. After Jordan returned from Trinidad her demeanor changed noticeably and Jordan did not want to talk about, call or take calls from her biological father whom she had visited in Trinidad.

13. In 2007 Hal and Leticia became engaged to be married. To please Leticia, Hal paid for an elaborate and expensive engagement party. However, no wedding date was set or announced at the engagement party because Leticia had not signed the prenuptial agreement Hal insisted she sign prior to setting a wedding date or getting married.

14. Hal truly loved, took good care of and provided for Leticia and Jordan and treated Jordan as if she were his 2nd daughter. Additionally, with Leticia's permission, Hal helped raise Jordan, as

a "Step-Daughter", and was involved in making sure Jordan received a good education, stayed on top of her studies, was tutored as needed, participated in extra-curricular activities including piano and dance lessons, was happy and was respectful of Herself, God, adults and her peers.

15. By June 2008 Hal and Leticia's relationship was strained because 1) Leticia was draining Hal financially and Hal was informed, from a trusted source that worked at Leticia's job, that Leticia had sexual relations with various co-workers at her job. Hal addressed the issue with Leticia who denied it. However, Leticia's sister (Sasha) who worked at the same company with Leticia later confirmed that Leticia had in fact had a sexual relationship with at least one male from her job nicknamed "Six-Two".

16. Because Hal truly loved Leticia and was hopeful, he stayed in the relationship with Leticia and The Defendants continued to live in Hal's apartment. The relationship between Hal and Leticia improved a bit but was far from perfect. Eventually the engagement was called off and Hal asked Leticia to return the diamond engagement ring.

17. During the years Hal and Leticia were together Hal was engaged in a protracted legal battle with the mother of Hal's daughter in Family Court over custody and child support.

18. In 2008 Hal and his long-time friend and business partner, Terrence Colbert ("Terrence"), commenced two lawsuits that sought $1.3 Million Dollars (Lawsuit #1) and $3 Million Dollars (Lawsuit #2), respectively, from a third business partner, John Edmonds ("Edmonds").

19. Edmonds was a Co-Owner and Co-Managing General Partner of the Limited Partnership that owned the four hundred forty-six unit 5th Avenue apartment building that Hal resided in with The Defendants commonly known as "Lakeview Apartments".

20. Per a brokerage agreement signed by Edmonds, Hal procured a buyer willing to pay $268 Million Dollars for Lakeview. However, due to differences on other deals and the then pending

lawsuits, Edmonds refused to sign a contract with the buyer Hal procure and instead entered a contract with another buyer for $260 Million Dollars that deprived Hal of the full $8.4 Million Dollars broker commission. However, a compromise, brokered by the other Co-Managing General Partner (Robert Seavey) that was/is subject to a non-disclosure agreement, was reached and certain partnership interests, instead of the property, were sold.

21. In January 2009, Hal informed Leticia that as a result of the compromise, Hal likely be moving from his 5th Avenue Apartment, by September, 2009, because Hal's relationship with Edmonds was in ruins and Hal refused to pay any of the five years of back rents for Hal's apartment that had not been paid in accord with Hal's a previous deal Edmonds was no longer honoring.

22. Also, in January 2009, Hal informed Leticia that she needed to find her own place and "move on" because Hal did not see their relationship ever progressing to a marriage.

23. For the next nine months, from January 2009 to August 2009, Leticia "*poured on the charm*" and applied her feminine wiles on Hal. The relationship once again improved a bit.

24. In July 2009 Edmonds secured an eviction Order against Hal. In response Hal rented a small three-bedroom house in a private community called The Glen @ Tamiment in Tamiment, PA.

25. Leticia had not found her own apartment, so she pleaded with Hal to allow her and Jordan to move with him to PA. Because Hal still loved Leticia and did not want to see The Defendants "on the street" he allowed them to move with him to his new home in Tamiment, PA.

26. Hal moved to PA in August 2009. After moving to PA, Hal secured his PA real estate broker license and canvassed the Glen @ Tamiment community specifically and Bushkill, PA area in general for available foreclosed properties. There were a lot of them. Terrence visited Hal numerous times and liked the area.

27. The Plaintiffs decided to begin acquiring real estate properties in PA, as investments.

28. In late 2009 Hal told Leticia about his new business venture with Terrence. Leticia put forth her "idea" that Hal should convince Terrence to use The Plaintiffs' company to purchase a large house and rent it to Hal until Hal and Leticia were ready to purchase The Real Property from The Plaintiffs' company. Hal immediately rejected this "idea" because he was still skeptical of Leticia and her "Idea" required no commitment on Leticia's part.

29. Because Hal had filed for bankruptcy in 2001 and could not secure a mortgage, Hal alternatively suggested that 1) Hal find a house large enough for them all (Hal and his daughter, The Defendants and Terrence) to live in 2) The Real Property be deeded to Terrence and Leticia 3) if within three years of acquiring The Real Property Hal and Leticia got married then Hal would acquire Terrence's interest, and if Hal and Leticia did not get married then Leticia's interest would be transferred to Terrence and 4) Hal, Leticia and Terrence would share the cost of the daily commute to NYC (gas, tolls, etc.) since all the adults worked in NYC and Jordan would continue to attend school in NYC.

30. Lawsuit #1 against Edmonds, pursuant to a non-disclosure agreement was settled in The Plaintiffs' favor and provide a substantial amount of funds to The Plaintiffs' Company.

31. From September 2009 to June 2010 Hal drove The Defendants to NYC so Jordan could complete the last year at her coveted junior high school and Leticia could continue working as a caterer at RA. Leticia did not drive at that time, so Hal did all the driving every morning and evening, which was extremely taxing on Hal.

32. In June 2010, 440 Underhill Drive, Tamiment, PA 18371 ("The Real Property")[1], a six-bedroom three and ½ bathroom foreclosed house in the private Glen @ Tamiment community, that Hal had found, was deeded to Terrence and Leticia.

---

[1] The Real Property was formerly known as 13 east Underhill Drive prior to the 911 Addressing change.

33. The Real Property was a handyman special that needed of a great deal of work. So, it was agreed between Hal, Leticia and Terrence that The Plaintiffs would invest the funds needed to repair and upgrade The Real Property through their company and Hal's work to retrofit and upgrade The Real Property would be considered an additional sweat equity investment.

34. From July 1st, 2010 to August 2010 Hal and a workers Hal hired work on The Real Property.

35. Hal, The Defendants and Terrence and moved into The Real Property in August 2010.

36. Terrence drove to NYC on Mondays, stayed in NYC during the week, returned to PA on Fridays to spend weekends in The Real Property because the daily commute was too taxing and getting to his job in the Bronx, NY by *AM when he commuted was nearly impossible.

37. When Jordan graduated from Junior High School she tested for and was accepted to Roosevelt High School which is a coveted public high school in NYC. This made Jordan very happy. However, Leticia's mother and sister both withdrew their offers to allow Jordan to stay at their house during the week while she went to high school, so Leticia enrolled Jordan at East Stroudsburg North High School ("ESNHS"), which was a five-minute drive from The Real Property. This made Jordan very sad and angry.

38. Hal also learned if Jordan attended high school in NYC, the NYC Department Of Education would charge a nonresident tuition in excess of seventy-five hundred dollars ($7,500) per year.

39. Jordan blamed and harbored anger towards Hal because he would not agree to continue driving to NYC every day so Jordan could attend Roosevelt High School.

40. It was later learned that Jordan's anger against Hal about not attending high school in NYC and being taken away from her NYC friends had festered and grew over the years.

41. Because his work schedule required him to be at work, in the Bronx, N.Y. very early, Terrence drove to NYC on Mondays, stayed in NYC during the week, and returned to PA on Fridays.

Terrence informed Hal the daily commute was too taxing and deprived him of his needed rest.

42. To be near Jordan, Leticia secured a part-time job as a lunchroom monitor at ESNHS, which barely paid any money, so Leticia often took catering jobs with RA in NYC on the weekends.

43. Virtually every time Leticia was in NYC, Jordan stayed in PA with Hal. On a few occasions Hal would drive Leticia and Jordan to NYC, and they would all spend the weekend in NYC.

44. Hal and Leticia were actively involved parents I Jordan life. In his role as Jordan's Stepfather Hal attended Jordan's Parent/Teacher conferences with Leticia and Jordan, joined ESNHS' PTA and volunteered as a coach for the cross-country running team Jordan was a member of.

45. Hal also drove Leticia to all of Jordan's running heats and competitions around PA.

46. In 2011, The Plaintiffs, through a jointly owned company, created a new company called Tax Prep USA. Inc. ("TPU"). TPU's 1st office was in space Hal shared with another real estate broker. Hal later found and secured new office space for TPU.

47. The Plaintiffs installed Leticia as President of TPU hoping Leticia would learn the income tax preparation business and, after Hal grew the business, and would be able to run it, earn sufficient income therefrom to fully support herself and provide a profit and free Hal up for other ventures. Notably, Leticia took only one tax preparation course given by Liberty Taxes.

48. Leticia continued working at ESNHS. Hal built TPU and secured virtually all TPU's clients.

49. Over time Leticia borrowed substantial monies from the businesses The Plaintiffs owned.

50. Due to the approaching three-year anniversary of the purchase of The Real Property, on October 10th, 2012, Leticia and Terrence knowingly & willing each executed a separate Power Of Attorney authorizing Hal to act on each of their respective behalf, if needed.

51. On October 29th, 2012, Hurricane Sandy hit PA and caused a power outage that lasted for days.

52. On Saturday, November 3rd, 2012 Jordan had a college tour at Penn State set for 8:00 A.M.

53. Because The Real Property was still without power due to Hurricane Sandy Hal asked an associate, who had a house in East Stroudsburg, if Hal, Leticia and Jordan could stay at his house the night before so they all could get showers and have good night sleep before Hal had to drive three hours to Penn State. Hal's associate gracefully allowed Hal, Leticia and Jordan to use the two bedrooms and bathroom on the second floor of his house.

54. Before going to his associate's house Hal took Leticia and Jordan to dinner. It was agreed they all would take showers and go directly to bed because it was late, and it **was not** a social visit.

55. While Hal was taking a shower at his associate's house Jordan banged on the bathroom door to rush Hal out. Hal came out of the bathroom and noticed Leticia was not on the second floor.

56. Hal went downstairs and looked all over the first floor and basement but did not see Leticia. Hal then noticed the door to his associate's bedroom was closed. Harris knocked on the bedroom door and then opened it and found Leticia and his associate (who had a noticeable erection) that showed through his pajama pants, near each other.

57. Hal asked Leticia why she was in the bedroom with the door closed. Leticia said Hal's associate was giving her a tour of his house. A short argument ensued, and Hal went to bed.

58. The next morning Hal drove Leticia and Jordan to Penn State. However, the incident made Hal skeptical of Leticia from that point forward.

59. In December 2012, Leticia's mother (Judy), father-in-law (Carl), sister (Sasha) and niece (Amantha) came from Brooklyn, NY to PA to spend the Christmas holiday with Leticia, Jordan and Hal. During this visit Leticia's mother, who is very opinionated, said Hal needed to marry Leticia and make a "honest women" of her or Leticia should have Hal move out of her house. Hal then informed Judy The Real Property was not really Leticia's and unless they got married soon, which was unlikely it would never be. Judy became visibly upset and told Hal off.

60. The next day, Judy and Hal had another argument which ended in Hal telling Judy that she had to leave his house and she could take Leticia with her. Thereafter, Judy, Carl, Sasha, Amantha, Jordan and Leticia all piled in Carl's car and left for Brooklyn. Leticia and Jordan returned by bus a few days later and Hal picked them up from the Martz bus station at Delaware water gap.

61. In February 2013, Leticia handed a cashier at Walmart what appeared to be a green credit card to purchase groceries. The cashier handed the card to Hal when the transaction was done since Hal was closer to her and Hal noticed the card stated "ACCESS" thereon. A closer review revealed the card in fact a public welfare benefit card. This shocked Hal.

62. When Hal and Leticia were in the parking lot after leaving Walmart, Hal asked Leticia where she had got a public welfare card. Leticia informed Hal she applied and was approved for it.

63. Hal responded that he did not understand how Leticia qualified for a public benefit card since the combined household income surely exceeded the level to qualify. Leticia stated she only used her income when she applied for the benefits card since she and Hal were not married.

64. Hal told Leticia he hoped she was not committing fraud and asked her what she had been doing with the cash Hal gave her each month to purchase food since she was using welfare benefits. Leticia's nastily replied; *"I spent the money you gave me on other things and since we are not married I don't have to include you on anything I file"*.

65. Hal ran for the elective office of Tax Collector for Lehman Township, on the republican ticket against the 36-year incumbent and a neighbor for the Glen @ Tamiment, who were both on the Democratic ticket. The election was contentious and had filed tow court challenges. The primary was held in March 2013 and the 36-year incumbent defeated Hal's by getting more republican write in votes. Notably, Hal was preparing to launch a write in vote campaign for the November 2013 General Elections when his life was derailed by the malicious acts of

Leticia and Jordan, that gave rise to this lawsuit.

66. Between September 2012 to June 2013 Hal assisted Jordan in studying for the S.A.T. so she would hopefully qualify for scholarships at good colleges and universities.

67. On April 12th, 2013, as had been previously agreed, Hal prepared and executed a Quit Claim Deed that transferred all of Leticia's interest in the Real Property to Terrence.

68. On the morning of Saturday, June 1st, 2013 Hal drove Leticia to the Martz bus station so she could go to NYC, supposedly to work as a caterer at a "Private" event". Hal then drove Jordan to New Jersey so Jordan could take the S.A.T. as had been scheduled. After Jordan finished her S.A.T. Hal drove her Verizon and purchased her a new smart phone as a gift because Hal was proud of Jordan for all the hard work and studying she had done leading up to the S.A.T.

69. On the evening of Saturday June 1st, 2013 Leticia returned to PA so she and Hal could attend an adult only house party at Leticia's friend's (Beverly) house in the Glen @ Tamiment. When Hal asked Leticia for gas money, she said she had not been paid and had to go back to NYC the next day for another "Private" event and that she would be paid for both afterwards.

70. While at the party Beverly's husband (Ron) pitched a business idea to a small gathering of men and then asked Hal to invest fifty-thousand dollars in his company that he claimed had invented a way to stop DVDS and CDS from being copied illegally. Hal was immediately skeptical because such an invention would be worth billions of dollars. Then from out of nowhere Leticia appeared with Ron's wife and Leticia states "*It sounds like a really good investment*".

71. Hal's light-hearted response to deflect Leticia's unsolicited comment was *"how would you know what a good investment is since you have never made one?"*. When the group of men disassembled Ron asked Hal if they both could meet the next day to discuss how much Hal could invest in Ron's company. Hal responded that he would need to see any all the patents

for the invention and the business plan for the company before considering any investment. Ron said the patent were being worked on by his attorney in Chicago and the business plan was not yet completed but Hal should meet with Ron and Ron's business partner, who had driven in from Chicago, the next day to discuss "the deal" in more detail. Hal told Ron to call him the next day and returned to the party, until Hal and Leticia left sometime after 2 A.M.[2]

72. On the morning of Sunday, June 2nd, 2013, Hal drove Leticia to Martz bus station so she could supposedly go work the 2nd "private" event. Hal then took Jordan to the movies in Marshall's Creek after which Hal picked up his friend Mike and then drove to Hal's house, got food and then went to the community's pool.

73. After eating at the picnic table in the pool area, Hal and Mike played chess and Jordan studied. About two hours later Jordan walked home alone. Hal and Mike stayed at the pool area playing chess until it closed and then played more chess games against other person in the nearby park for another hour or so. Hal then drove Mike home.

74. On the evening of Sunday, June 2nd, 2013 Hal returned home and found Jordan studying in the sunroom. Hal borrowed Jordan's Ipod to play Candy Crush and Temple Run. After playing the game Hal discovered, on Jordan's Ipod, that Jordan, who was sixteen (16) years old at that time had been engaging in cybersex activities, on numerous online websites, with various adult males. Hal talked with Jordan about the dangers of her sordid cybersex activities and placed Jordan on immediate punishment that included confiscating her cell phone and Ipod, banning her from the internet and limiting her to her room. Hal informed Jordan that she was not to touch her computer and that additional punishment would come when mother/Leticia returned from NYC. Jordan pleaded with Hal not to tell her mother. However, when Leticia returned

---

[2] Ron did not call Hal the next day, likely because Leticia informed Ron's wife that Hal had told Leticia that Ron's "investment opportunity" sounded like nothing more than scam.

Case 5:14-bk-02262-HWV    Doc 122    Filed 06/21/22    Entered 06/21/22 15:47:58    Desc
Main Document    Page 14 of 45

from NYC after 1 A.M. on June 3rd, 2013 Hal informed Leticia about Jordan's sordid activities.

75. On the afternoon of Monday, June 3rd, 2013, after Jordan and Leticia returned home from the high school where Jordan was an 11th grade student and Leticia worked, Hal addressed Jordan's sordid cybersex activities with Leticia, in Jordan's presence. At that time Jordan falsely accused Hal of raping her on June 2nd, 2013. At that time Hal thought Jordan made the false accusation to avoid being punished by Leticia. However, as time revealed it was part of the malicious scheme Leticia had likely conjured up to get Hal out of his house.

76. Hal denied Jordan's false allegation and stated Jordan's cybersex activities and false allegation against Hal should be immediately reported to the police. However, Leticia, for reasons to this date unknown to Hal, did not want to punish Jordan or call/involve the police.

77. The next afternoon, on Tuesday, June 4th, 2013, to avoid any further false allegations Hal informed Leticia that she and Jordan could not stay in his home until Jordan's false allegations against him were unresolved. Hal informed Leticia that he would drive her Leticia and Jordan to wherever Leticia wanted to go and stay until the matter was resolved including Hal paying for a hotel for a few days. Leticia said she and Jordan would go to the community pool so she could think of where she wanted to go.

78. At about 6PM on June 4th, 2013 after Leticia and Jordan had packed their bags they left on foot to walk to Leticia's friend's house (Beverly) who lived in the same (Glen @ Tamiment) community. Notably, Leticia's friend was a retired NYC corrections officer and her husband (Ron) was a retired NYC police officer.

79. The next morning, Wednesday, June 5th, 2013, Ron informed Hal by telephone, that Leticia and Jordan had went to the Pennsylvania States Police ("PSP") with his wife to report that Hal had allegedly 1) punched Jordan in her head, burst blood vessels in her leg and then forcible

raped Jordan on Sunday, June 2nd, 2013 2) had been raping sexually assaulting Jordan, on a regular basis, (over 150 times) during the prior eight (8) years and 4) choked Leticia to near unconsciousness prior to The Defendants leaving Hal's house on June 4th, 2013. Ron also informed Hal that Leticia was at the time at the Pike County Courthouse to get a Protection From Abuse Order ("PFA") to have Hal immediately evicted from his home.

80. On June 4th, 2019 1) PSP did not take any pictures of any alleged injury or bruise that Hal allegedly inflicted on either of The Defendants 2) The Defendants **DID NOT** inform PSP that Hal had discovered Jordan's sordid cybersex activities with various adult males on June 2nd, 2013, placed Jordan on punishment and reported the same to Leticia and 3) Leticia declined PSP offer to file charges against Hal for the alleged assault she sustained.

81. Rather curiously and contrary to standard police procedure, The Defendants, who had allegedly been physically assaulted and raped were not taken to any hospital by PSP to been seen by Medical personnel and to preserve any evidence.

82. On June 5th, 2013, The Defendants filed separate petitions in This Court seeking separate petition for PFA's to have Hal evicted from his home. The Honorable Judge Gregory Chelak denied Jordan's PFA Petition but granted Leticia's PFA Petition and issued a Temporary PFA that immediately evicted Hal from his home and business on June 5th, 2013.

83. No injury was noted by Judge Chelak at the Ex-Parte PFA Petition hearing and no pictures or medical report(s) was introduced or admitted in evidence to document any of the alleged injuries that Hal allegedly inflicted on either of The Defendants. The reason for the latter is because Hal was falsely accused of assaulting The Defendants.

84. Further, during the June 5th, 2013 Ex-Parte PFA Petition Hearing Leticia committed perjury

and told the judge she owned The real Property which she knew was solely owned by Terrence[3] and that had control of The Real Property.

85. On Friday, June 7th, 2013, PSP Trooper Frank Orlando picked The Defendants up from the Stroudsburg North High School and transported them to the Children's Advocacy Center ("CAC") in Scranton, Pennsylvania where Jordan underwent a full "rape kit" medical examination and video-taped forensic interview ("Forensic Video"). A five-page evaluation report of Jordan's rape kit exam was produced and signed by CAC's medical doctor on June 7th, 2013 ("CAC Evaluation Report") that proved 1) Jordan was a virgin with an intact hymen 2) had fabricated her story that Hal raped her and 3) documented other misrepresentations and inconsistencies by Jordan, was signed by Dr. Michael J. Rogan, M.D.

86. In accordance with 204 Pa. Code § 213.81 the completed Confidential Information Form with (signed by Plaintiff Hal Harris) with a true copy of the **unredacted** five-page June 7th, 2013 CAC Evaluation Report issued by Michael J. Rogan, M.D attached thereto is being filed contemporaneously with this Complaint.

87. A true copy of the redacted five-page June 7th, 2013 CAC Evaluation Report is submitted herewith as **Exhibit 3.**

88. Jordan's false allegations were also reported to Pike County Children And Youth Services ("CYS"), who issued two (2) letters, both dated June 11th, 2013 that informed Hal that he was named as the alleged perpetrator of 1) Physical Abuse and 2) Sexual Abuse against Jordan.

89. On June 25th, 2013, Terrence served a Notice To Quit ("NTQ") on Leticia giving her 30 days, (until July 24th, 2013) to vacate The Real Property.

90. In late June 2013, Leticia with malicious intent delivered a letter to Hal's daughter's mother

---

[3] Leticia's ownership interest in The Real Property was conveyed to Terrence on April 12th, 2013, with Leticia's knowledge. This issue was litigated and resolved by the State Court Stipulation & Order on January 31st, 2014.

apartment in NYC that stated therein that Hal had raped Jordan. Hal's daughter's mother took the letter to the Bronx Family Court and Hal to visitation with his daughter to summarily suspended until Hal's attorney filed motions to have the suspension of Hal's visitation was reversed. Hal's visitation was restored until after it was proven that The Defendant false allegations against Hal were unsubstantiated.

91. On July 10th, 2013 a Final PFA was issued by This Court. On the advice of Hal's then legal counsel, Hal consented to the PFA **without** admissions, because a criminal investigation was pending at the time. The Final PFA evicted Hal and Hal's daughter from his home, banned Hal from his business office and stripped Hal of his second amendment right to bear arms among other things.

92. By letter dated July 10th, 2013, CYS notified Hal that CYS' "investigation" found the allegation the Hal physically abused Jordan (prior to allegedly raping her on June 2nd, 2013) was **unfounded.**

93. On July 24th, 2013 Leticia filed a civil lawsuit styled Leticia Couttien v. Terrence Colbert and Hal Harris - Docket No. 1171-CIV-2013 ("Leticia's Lawsuit") wherein Leticia false claims including that she was a co-owner of The Real Property. See Count I below for more details.

94. On September 3rd, 2013 The Plaintiffs and Leticia entered a Stipulation, made an ORDER of The Court that provided Leticia Temporary Exclusive Possession so The Plaintiffs could have time respond to Leticia Pleadings that had not been properly served on Hal. The 9/03/13 Stipulation required Leticia pay the mortgage and all other expenses related to the ownership and maintenance of The Real Property. Leticia utterly failed to comply with her obligations.

95. On December 16th, 2013 The Plaintiffs filed an Answer and Counterclaims with supporting exhibits that 1) proved Leticia was not a Co-Owner of The Real Property 2) contained a

Replevin Counterclaim to secure all personal property from The Real Property and 3) sought an injunction against Leticia to protect The Plaintiffs' personal property

96. Leticia's sworn answer, to The Plaintiffs' Replevin Counterclaim, in furtherance of Leticia's wrongful use of a civil proceeding, was The Plaintiffs' personal property listed in the Replevin Counterclaim did not exist and/or where all purchase by Leticia.

97. The Plaintiffs and Leticia later would later enter into a stipulation (On January 31st, 2014) that provided Leticia continues temporary exclusive possession based her fraudulent representations that she had the financial wherewithal 1) to secure financing to purchase The Real Property within ninety (90) days and 2) pay all costs and expenses attributable to maintenance and ownership of The Real Property until she either purchased The Real Property. Leticia fraudulent representation were made for no other reason than to gain more time in The Real Property without paying any cost in furtherance of her wrongful use of a civil proceeding.

98. The Defendants, as a result of their malicious scheme, lived in and enjoyed exclusive possession of The Real Property for about fifteen (18) months without paying the mortgage or other expense and Letica was obligated to do.

99. After The Plaintiffs filed a Petition For contempt against Leticia for her failure to abide by the Court Ordered Stipulation Leticia filed an Answer and then shortly thereafter filed a Chapter 7 personal bankruptcy on May 14th, 2014 and a "Suggestion Of Bankruptcy" with This Court that automatically stayed the Leticia Lawsuit. Ultimately the lender foreclosed the mortgage and The Real Property was lost to the bank, due to Leticia's failure to make mortgage payments as the Court Ordered stipulation required her to do. The latter is addressed in Count I below.

100. By letter dated August 10th, 2013, Pennsylvania Department Of Public Welfare ("DPW") notified Hal that CYS named Hal was an "indicated perpetrator" of sexual abuse against Jordan

and that as a result DWP listed Hal on the Pennsylvania's Statewide Register Of Child Abuse.

101.    Hal immediately appealed CYS' "Indicated Perpetrator" filing.

102.    On September 30th, 2014, an administrative hearing was conducted by DWP's Hearing And Appeal Bureau before DWP Administrative Law Judge ("ALJ"). CYS was represented by legal counsel. Hal was Self-Represented. Though Hal had subpoenaed Jordan and Leticia to appear and testify at the DWP Hearing neither of the Defendant appeared because they knew their allegations against Hal were all false and fabricated.

103.    A CYS caseworker appeared, testified and was cross-examined by Hal at the DWP Hearing. The CYS offered no evidence to support The Defendants false allegations or CYS' "indicated perpetrator" report.

104.    By Order dated November 13th, 2014 DWP Sustained Hal's appeal and Ordered DPW to 1) expunge the report naming Hal an indicated perpetrator of sexual abuse against Jordan and 2) remove Hal's name from Pennsylvania Statewide Register Child Abuse. To this date Hal has not received written confirmation that CYS expunged their reports. A true copy DPW's November 13th, 2014 Order that sustained Hal appeal is submitted herewith as **Exhibit 4.**

105.    On January 21st, 2015, about nineteen (19) months after The Defendant filed their false allegations, the PSP filed sixty-nine (69) criminal charges against Hal.

106.    On January 23rd, 2015, Hal voluntarily surrendered and attended the Preliminary Arraignment at the local Magisterial District Court. After the Preliminary Arraignment Hal was arrested and detained at Pike County Correctional facility until Hal posted the one hundred thousand dollars ($100,000) bail set by the Magisterial District Judge.

107.    On January 26, 2015, January 28th, 2015 and January 30th, 2015 the Pocono Record, the local paper distributed in the communities where Hal lives and works, published articles in

their hard copy and online editions reporting that Hal was arrested for raping a minor (Jordan).
These reputation damaging articles appeared on the front page of the Pocono Record.

108. In February 2015, with malicious intent to purposely injure Hal's reputation and cripple Hal's ability to earn a living, Leticia mailed and/or caused to be mailed letters with a copy of the Pocono Record Article(s) about Hal being arrested, based on Jordan's false allegations, to all of Hal's real estate clients and to the various non-profit and civic organizations Hal was then a member and/or a Board Director of.

109. As a direct result of Leticia mailing the defamatory articles to Hal's clients and organizational affiliates Hal's lifetime membership in the prestigious 100 Black Men, Of NYC, Inc. was suspended, Hal was forced off the Board Of Directors of various non-profit organizations and various clients refused to pay commissions they owed Hal.

110. Hal COUD NOT to pursue civil lawsuits to collected monies Hal was rightfully owed and entitled to because all of Hal's funds had been depleted to post bail, secure legal advice for the Family Court and CYS matters and retain legal counsel for the then pending criminal matter.

111. On April 22nd, 2015 the Preliminary Hearing was held, at which Jordan testified and was cross examined by Hal who was self-represented. At that time Jordan used a criminal proceeding and perjured herself on the witness stand in order to further The Defendants scheme to keep exclusive possession of The Real Property.

112. At the conclusion of The Preliminary Hearing three of the charges were dismissed because Jordan never gave any testimony to support those charges even though the Assistant District Attorney continually asked leading questions. A redacted copy of the Court Of Common Pleas Of Pike County docket sheet (page 8 of 32) showing the three criminal charges dismissed is

submitted herewith as **Exhibit 5**.[4]

113.  Hal has sought the expungement of the criminal record and information so an unredacted copy of the docket can be obtained from The Court, if it is needed.

114.  On April 23rd, 2015 The Pocono Record and Blue Ridge Cable published and aired articles detailing portions of the false testimony Jordan gave at the Preliminary Hearing.

115.  By letter dated May 19th, 2015 CYS informed Hal that CYS had filed another report with Pennsylvania Department of Human Services ("DHS")[5] once again naming Hal as an indicated perpetrator of sexual assault against Jordan based on the same facts and circumstances (Jordan's false allegations) that gave rise to the June 2013 report that DPW had been expunge.

116.  Resultant from CYS' unjust 2015 indicated perpetrator report Hal was once again listed on the Pennsylvania Child Abuse Register as "Indicated Perpetrator" of abuse [against Jordan].

117.  Hal once again appeals CYS' "Indicated Perpetrator" report but the appeal was automatically stayed due to the then pending criminal proceeding.

118.  As a direct result of The Defendants false allegations and the criminal charges that followed in 2016 NYC State refused to renew Hal's real estate broker's license. This caused Hal to lose clients and deals and to have obtain the assistance of an attorney to get NYC State Division of Licensing Services to eventually issued Hal a conditional real estate broker's license and required Hal submit the entire criminal information that had been filed against Hal and give monthly updates on the status of the then pending criminal case.

119.  Hal's Criminal Jury trial was conducted on September 20th, 21st and 22nd, 2017.  During Hal's jury trial Jordan in furtherance The Defendant Malicious scheme testified and made numerous false statements including that Hal had raped her on a regular based over many years,

---

[4] Hal Seeks to have the criminal record expunged so there is no need to list the criminal charges in this civil suit.
[5] DHS became the new name for DPW.

which calculated to be over one hundred and fifty (150) times.

120.    However, the exhibits presented and admitted in evidence including but not limited to the June 7th, 2013 CAC Evaluation Report (**Exhibit 3** attached hereto) and June 7th, 2013 CAC Vide of Jordan's Forensic Interview proved that Jordan was still a virgin and had fabricated the story that Hal had raped, sexually assaulted and/or harassed in any way.

121.    On September 22nd, 2017 after three (3) day trial the Jury review of the June 7th, 2017 the unredacted Copy of the CAC Evaluation Report Hal was quickly found Hal **NOT GUILTY** of all forty-five (45) criminal felony charges and the trial judge also found Hal **NOT GUILTY** of all twenty-one criminal summary offenses.

122.    A redacted copy of the ___ jury verdicts sheets finding Hal NOT GUILTY of all forty-five the Felony Criminal Charges is submitted herewith as **Exhibit 6**[6].

123.    A copy of the trial Judge (Hon. Gregory Chalek) Order finding Hal NOT GUILTY of all twenty-one (21) summary offense submitted herewith as **Exhibit 7.**

124.    Hal also got the stay lifted on the appeal hearing of CYS' second "Indicated Perpetrator" report. That matter was also decided in Hal's favor. To wit, by ORDER dated January 19th, 2018 DHS Sustained Hal's Appeal and ORDERED DHS to 1) expunge their records related to CYS report that named Hal an "Indicated Perpetrator" and 2) remove Hal's name from the Pennsylvania Statewide Registry For Child Abuse. To date DHS nor CYS has provided Hal any written certification that the DHS order was complied with.

125.    A true copy of DHS' Order dated January 19th, 2018 is submitted herewith as **Exhibit 8.**

126.    Hal also filed a Petition For Expungement with This Court on October 6th, 2017. This court issued an Order Of Expungement ("OOE") On December 12, 2017. However, due to 1)

---

[6] The descriptions of the criminal charges Hal was Acquitted of were redacted to protect Hal's reputation.

numerous errors in and omissions in the OOE 2) the Clerk Of Courts and This Court's failure to provide Hal **certified copies** of the Trial Exhibits admitted in evidence that exonerated Hal (namely the June 7th, 2013 CAC Evaluation Report and CAC Forensic Video) 2) and the Clerk of Courts' failure to provide a copy of the OOE to PSP Hal continues to suffer because his criminal records and criminal history information have still not been expunged two years after Hal was fully acquitted of all the heinous allegations The Defendants fabricated that Hal was charged with. This process has delayed Hal's ability to move on with his life and secure gainful employment and/or new clients.

127.    Terrence's credit rating continues to suffer due to the foreclosure of The Real Property caused by Leticia's failure to pay the mortgage and other expense real to The Real Property as the State Court Stipulation & Order require her to do.

128.    The Plaintiff have suffered substantial losses due to Leticia wrongful use of civil proceedings and abuse of civil process in the form of loss wages, loss time, expenditure of legal fees and travel cost and opportunity cost losses.

129.    Originals and certified copies of exhibits submitted with this Complaint are available for review by The Court if needed.

130.    The Claims The Plaintiffs bring against The Defendants are forth on the following pages.

**BALANCE OF THIS PAGE WAS LEFT BLACK INTENTIONALLY**

## COUNT I
## MALICIOUS USE OF PROCESS/WRONGFULL USE OF CIVIL PROCEEDING
Civil Lawsuit Filed In Court Of Common Pleas For Pike County, Pennsylvania

131.    All the above averments are incorporated here as if set forth here in their entirety.

132.    The Plaintiffs Assert Count I pursuant to 42 Pa.C.S.A. §§ 8351-8355 commonly referred

to as the "Dragonetti Act" which provides and states in pertinent part:

> "A person who takes part in the procurement, initiation or continuation of civil
> proceedings against another is subject to liability to the other for wrongful use of
> civil proceedings [if]:
>
> 1.  He [she] acts in a grossly negligent manner or without probable cause and
>     primarily for a purpose other than that of securing the proper discovery, joinder
>     of parties or adjudication of the claim in which the proceedings are based; and
>
> 2.  The proceedings have terminated in favor of the person against whom they are
>     brought."

133.    On July 25th, 2013 Leticia knowingly filed a frivolous lawsuit styled *Leticia Couttien,

*Plaintiff v. Terrence Colbert And Hal Harris, Defendants 1171-CIV-2013* ("The Couttien

Lawsuit") that consisted of various pleadings including 1) A Complaint 2) Petition For

Exclusive Possession 3) Motion To Strike Deed and 4) a Lis Pendens.

134.    The Complaint of The Couttien Lawsuit asserted the following claims;

    A.  Count 1: Plaintiff v. Defendant Harris - Breach of Fiduciary Duty.

    B.  Count II: Plaintiff v. All Defendants - Civil Conspiracy.

    C.  Count III: Replevin/Conversion - Plaintiff v. Defendant Hal Harris.

    D.  Count IV: Partition - Plaintiff v. Defendant Terrence Colbert.

135.    The Couttien Lawsuit was filed to illegally and wrongfully use a civil proceeding to;

    1.  Thwart an imminent action to have The Defendants evicted from The Real Property.

    2.  Cover Leticia's theft and conversion of The Plaintiffs' business and assets.

3. Injure Hal's reputation, credibility standing and businesses with knowingly false and heinous claims including that Hal had 1) physically abused Leticia 2) raped and sexually assaulted Jordan 3) had stolen funds from Leticia and 4) misused a Power Of Attorney and breached his fiduciary responsibilities to Leticia. And

4. Extort temporary exclusive possession of The Real Property until Leticia could find alternative housing for The Defendants.

5. To gain the fee use of the Plaintiffs' personal property in The Real Property.

136. Notably, The Couttien Lawsuit was filed on the first day, the Notice To Quit served on Leticia, informed that a lawsuit to evict The Defendants from The Real Property could be filed.

137. Throughout The Couttien Lawsuit proceedings, Leticia never produced any evidence to prove even one of her malicious and frivolous claims against The Plaintiffs.

138. On December 16th, 2013, The Plaintiffs through their then legal counsel filed 1) an Answer And Counterclaims, that included a replevin Counterclaim 2) Petition To Dismiss Plaintiff's Motion To Strike Deed and 3) Motion For Leave Of Court To Sell Real Estate And For Injunctive Relief Directing The Return Of Personal Property Pending Trial. The Pleadings filed by The Plaintiffs contained exhibits that laid bare Leticia's false claims.

139. After reviewing The Plaintiffs' above-mentioned pleadings and supporting exhibits, Leticia's then legal counsel filed a Motion To Withdraw As Counsel ("Motion To Withdraw") at 4:13 PM of the same day (12/16/13) they received The Plaintiffs' Answer and Counterclaims

**140. All of Leticia's claims against The Plaintiffs in The Couttien Lawsuit were resolved in The Plaintiff Favor.**

141. On January 31st, 2014 all of Leticia's frivolous claims in The Couttien Lawsuit were resolved in The Plaintiffs' favor pursuant to a stipulation between The Parties that was made

an ORDER Of This Court ("State Court Stipulation & Order"), which consequently left all of
The Plaintiff's Counterclaims including the Replevin Counterclaim against Leticia open.

142.    A true copy of the State Court Stipulation & Order is submitted herewith as **Exhibit 1.**

143.    By ORDER dated March 11th, 2014 This Court GRANTED the Motion To Withdraw.

144.    Leticia deliberately did not make any mortgage payments during the year plus she had
Temporary Exclusive Possession of The Real Property as she was required to do pursuant to
the State Stipulation & Order. This caused the mortgage to fall into serious arrears and the
accumulation of late fees and legal fees in excess of twenty thousand dollars ($20,000).

145.    On April 7th, 2014 The Plaintiff's then legal counsel filed a Petition For Contempt against
Leticia due to Leticia's failure to make any mortgage payments and her total failure to comply
with any of her obligations as set forth in The State Court Stipulation & Order.

146.    On April 29th, 2014 Leticia filed her Answer To Petition For Contempt, as a Pro-Se litigant,
that contained statements verified subject to Pa.C.S. 4904 that Leticia knew were false.

147.    By ORDER dated May 20th, 2014 This Court set the Contempt Hearing for July 1st, 2014.

148.    On June 25th, 2014 Leticia's Bankruptcy attorney filed a Suggestion Of Bankruptcy.

149.    By ORDER dated June 26th, 2014 This Court stayed the Leticia Lawsuit in accord with
Federal Bankruptcy Law. The stay lasted for over four and half years because The Plaintiffs
filed an Adversary Proceeding ("The AP") against Leticia to challenge the various fraudulent
misrepresentations Letica made on her bankruptcy schedules & statements.

150.    **The AP was decided in The Plaintiffs' Favor** and is discussed in detail in Count II below.

151.    This Court lifted the stay on The Couttien Lawsuit and rescheduled the Contempt Hearing
for May 7th, 2019. After the Contempt Hearing, This Court issued an ORDER on May 14th,
2019 finding Leticia to be in Contempt of The State Court Stipulation & Order.

152.	The Sanctions Hearing was held on June 11th, 2019. Thereafter, This Court issued an ORDER dated June 25th, 2019 in favor of The Plaintiffs against Leticia that directed Leticia to pay certain monies to The Plaintiffs to reimburse them for costs and losses incurred in connection with Leticia's Contempt of The State Court Stipulation & Order.

153.	To This date Leticia **HAS NOT** complied with This Court's June 25th, 2019 Sanctions Order and HAS NOT paid even one cent to The Plaintiffs as This Court ORDERED her to do.

154.	Leticia erroneously thought The Couttien Lawsuit would 1) drive a wedge between The Plaintiffs and 2) skate through because Hal would be unable to defend against The Couttien Lawsuit because Hal would be incarcerated in connection with the heinous false allegations The Defendants had filed against Hal with PSP.

155.	The ultimate objective of The Couttien Lawsuit was to wrongfully use a civil proceeding to delay The Defendants eviction from The Real Property and maliciously injure Hal.

156.	As a result of Leticia's malicious and wrongful procurement, initiation and continuation of The Couttien Lawsuit and her fraudulent claims made therein, The Plaintiffs have suffered losses that exceed fifty thousand dollars ($50,000).

157.	WHEREFORE, The Plaintiffs seeks a Judgement in their favor against Leticia, in an amount in excess of fifty thousand dollars ($50,000) plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief This Court or a jury deems is just and proper.


**BALANCE OF THIS PAGE WAS LEFT BLACK INTENTIONALLY**

## COUNT II
## MALICIOUS USE OF PROCESS/WRONGFULL USE OF CIVIL PROCEEDING
Bankruptcy Filed In U.S. Bankruptcy Court For The Middle District of Pennsylvania

158.    All the above averments are incorporated here as if set forth here in their entirety.

159.    On May 14th, 2019 Leticia filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court
For The Middle District Of Pennsylvania ("Bankruptcy Court") under the caption *In Re:
Leticia R. Couttien (S.S.# 4398) a/k/a/ Leticia Roman Couttien a/k/a/ Leticia Couttien, Debtor
- Chapter 7 - Case No. Bk-5:14-02262* ("Leticia's Bankruptcy Case").

160.    Leticia's maliciously and wrongfully used her Bankruptcy Case to 1) delay her eviction
from The Real Property until she moved into a condominium unit she DID NOT report on her
bankruptcy schedules 2) to try and avoid her non-dischargeble pre-bankruptcy obligations set
forth in the State Court Stipulation & Order 3) derail the scheduled Contempt Hearing in The
Couttien Lawsuit 4) provide illegal cover to Leticia's then anticipated theft of The Plaintiffs
personal property from The Real Property 5) maliciously delay the termination of her
temporary exclusive possession and required surrender of The Real Property to The Plaintiffs
6) delay the discovery of Leticia's abandonment and destruction of The Real Property and 7)
increase the financial injuries to The Plaintiffs by allowing the unpaid mortgage balance to
increase while she enjoyed the protection of the automatic stay.

161.    After reviewing Leticia's bankruptcy schedules and statements, The Plaintiffs filed an
Adversary Proceeding against Leticia, styled *Terrence A. Colbert & Hal H. Harris, Plaintiff v.
Leticia R. Couttien, Defendant - Adversary Proceeding No. 5:14-ap-00269* ("The AP") to
challenge Leticia's Bankruptcy Case due to numerous intentional and fraudulent
misrepresentations Leticia made on her bankruptcy schedules and statements including, but
not limited to, Leticia's false claims that 1) she owned The Real Property 2) she owned all of

The Plaintiffs' personal property listed in the Replevin Counterclaim in the Couttien Lawsuit and 3) The Plaintiffs owed Leticia thirty thousand dollars ($30,000).

**162.    The AP was decided in The Plaintiffs' favor.**

163.    To wit, **after** The Plaintiffs conducted discovery that included deposing Leticia under oath in a Rule 2004 Examination and issuing Federal subpoenas on Leticia and numerous Non-Parties Leticia's bankruptcy attorney began settlement discussions, in earnest, that resulted in The Parties entering a *Stipulation To Resolve Adversary Proceeding* that was ORDERED by The Bankruptcy Court on December 5th, 2017 ("Bankruptcy Stipulation & Order"), which provided a monetary judgment in The Plaintiffs favor against Leticia, exempted he Couttien Lawsuit specifically and further Exempted any and all future litigation The Plaintiffs may bring against Leticia from bankruptcy discharge "In to Perpetuity".

164.    A true copy of the Bankruptcy Stipulation & Order submitted herewith as **Exhibit 2-A.**

165.    The Bankruptcy Stipulation & Order included a notarized affidavit, signed and sworn to by Leticia entitled *Affidavit Of Defendant/Debtor* that was attached thereto that confirmed Leticia's intentionally malicious acts to wit Leticia admitted and stated the following at ¶10 & ¶11 of the Affidavit OF Defendant/Debtor;

    a.    *"When I* [Leticia] *vacated the Real Property, I removed personal property that I did not own, including items set forth in the replevin action indexed at docket no. 1171-CIV-2013* [The Couttien Lawsuit], *having neither contributed money and/or any consideration for the purchase of the personal property."* AND

    b.    *"I* [Leticia] *removed the items of personal property from The Real Property, without the knowledge, authorization and/or permission from Colbert and/or Harris."*

Case 5:14-bk-02262-HWV    Doc 122    Filed 06/21/22    Entered 06/21/22 15:47:58    Desc
Main Document      Page 30 of 45

166. At ¶14 and ¶15 of The Affidavit Of Defendant/Debtor Leticia further admits and states;

    a. *"In 2013, during the time I had exclusive possession of The Real Property, I contacted Allstate Insurance Company by telephone, and I requested that Colbert be removed from the then existing Homeowners Insurance Policy."* And,

    b. *"When I requested that Colbert be removed from the Home Owners insurance policy, I did so without his prior knowledge and/or permission and I was not authorized by Colbert or anyone else to remove Colbert from the then existing Home Owners Insurance Policy that had been issued and was at the time in force by Allstate Insurance Company."*

167. A true Copy of The Affidavit Of Defendant/Debtor that was attached to the Bankruptcy Stipulation & Order is submitted herewith as **Exhibit 2-B.**

168. Leticia's ultimate objective for filing the Bankruptcy Case was to wrongfully use a civil proceeding to 1) delay her rightful eviction from The Real Property 2) cover her theft of The Plaintiffs' personal property from The Real Property 3) delay and impede The Plaintiffs ability to collect insurance for their personal property that Leticia stole from The Real Property 4) prohibit commencement of legal actions against her and 5) maliciously injure The Plaintiffs.

169. Resultant from Leticia's wrongful procurement, initiation and continuation of the Bankruptcy Case and her fraudulent claims made on her bankruptcy schedules and statements The Plaintiffs have suffered losses exceeding thirty thousand dollars ($30,000).

170. WHEREFORE, The Plaintiffs seeks a Judgement in favor Of The Plaintiffs against Leticia an amount in excess of thirty thousand dollars ($30,000) plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief This Court or a jury deems just and proper.

## COUNT II
## MALICIOUS USE OF PROCESS/WRONGFULL USE OF CIVIL PROCEEDING
### The Children And Youth Services ("CYS") Proceedings

171.    All the above averments are incorporated here as if set forth here in their entirety.

172.    Leticia attempted to use the CYS to further her endeavor to strip Hal of his assets, get

control of The Real Property and Hal's business while simultaneously destroying Hal income

earning potential so Hal could not defend himself against the avalanche of legal problems The

Defendants heinous false allegations unleased on Hal.

173.    On information and belief Hal avers that Leticia was informed that if she and Jordan

cooperated with CYS a symbiotic relationship would be created and exist. To wit CYS would

be able to issue  reports naming Hal as a indicated perpetrator of physical and/or sexual abuse

against Jordan thus allowing The Defendants would gain by 1) receiving "victim" benefits 2)

having the CYS reports with negative findings reports against Hal to aid The Defendants

endeavors to get a PFA & longer Exclusive Possession of The Real Property and 3) the reports

to serve as basis for one or more civil lawsuits against Hal.

174.    The Defendants took part in the procurement, initiation and/or the continuation the civil

proceedings (i.e. the appeals of the CYS' "indicated perpetrator") report that were filed with

DWP and DHS respectively.

175.    The Defendants were present at the Pennsylvania Department Of Welfare ("DWP")

Administrative Hearing in continuance of their aiding CYS to maliciously carry on a civil

proceeding against Hal without any probable cause because the evidence available at the time

proved Jordan was a virgin.

176.    The Defendants cooperated and participated with CYS in the civil proceeding against Hal

for the nefarious and wrongful purpose of trying to secure a finding from an Administrative

Agency/Hearing Officer, that uses a lower standard to proof to aid and further The Defendants' goal of taking The Plaintiffs property in general and Hal's property and liberty in particular.

177. Hal had to appeal two CYS Indicated Perpetrator Reports that were both based on the same fact and circumstances as set forth by The Defendants false allegations.

178. Because Hal was listed on the Pennsylvania Statewide Child Abuse Registry (which is shared with other States that Pennsylvania has reciprocity with) Hal was unable to seek or secure employment for any Job in Pennsylvania that dealt with children in any manner including the coaching job that was available at East Stroudsburg North High School.

179. Hal also suffered losses to get legal advice, prepare for the DWP and DHS hearings and travel to and from hearings.

180. Resultant from The Defendants' wrongful procurement, initiation and continuation of CYS Proceedings and Hal has suffered losses exceeding twenty-five thousand dollars ($25,000).

181. WHEREFORE, The Plaintiffs seeks a Judgement in favor Of The Plaintiffs against Leticia an amount in excess of twenty-five thousand dollars ($25,000) plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief This Court or a jury deems just and proper.

## COUNT III
## ABUSE OF PROCESS BY LETICIA R. COUTTIEN

182. All the above averments are incorporated here as if set forth here in their entirety.

183. As set forth above The Defendants maliciously filed false reports with PSP on June 4th, 2013 (on the very day Hal The Defendants to leave his home) for the unlawful and nefarious purposes of 1) gaining exclusive possession of Hal's home 2) making use of Hal's and

Terrence's personal property in The Real Property 3) shielding Jordan's illegal sordid cybersex activities from being exposed 4) getting Hal "out of the way" by having Hal unjustly imprisoned 5) to maliciously injure Hal's reputation and standing and income and 6) extort extended temporary exclusive possession of The Real Property until The Defendants could locate and secure alternative housing.

184.    Abuse Of Process is a Common Law Tort that is a close cousin to but distinct from the statutorily tort of Malicious Use Of Process/Wrongful Use Of Civil Proceeding and has been defined by The Pennsylvania Courts as follows;

> "abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. 1998)* citing *Rosen v. Am. Bank of Rolla, 426 Pa. Super. 376, 627 A.2d 190, 192 (1993).*

185.    The Shiner Court set forth that;

> *"This tort [Abuse of Process] differs from that of wrongful use of civil proceedings in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial"* and *"The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure."* See Shiner, Supra, at page 192.

186.    The Shiner Court also provided;
> *"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."*

187.    As set forth above, The Defendants injured Hal by using civil and criminal legal processes against Hal for purposes those legal processes were NOT designed to be used for.

Case 5:14-bk-02262-HWV    Doc 122    Filed 06/21/22    Entered 06/21/22 15:47:58    Desc
Main Document    Page 34 of 45

188. Leticia used The Couttien Lawsuit to delay The Defendants eviction from The Real Property and to extort concessions, including but not limited to the temporary exclusive possession of The Real Property and use of personal property (furniture, appliances, and other household goods) owned by The Plaintiffs without payment by The Defendants to The Plaintiffs for the use of The Real Property and personal property.

189. Leticia used The Couttien Lawsuit against The Plaintiffs despite her knowledge that she did not have an ownership interest in The Real Property or The Plaintiff's personal property.

190. In the instant case when Leticia unscrupulously used The State Court Stipulation which was designed to bring resolution to The Couttien Lawsuit as a sword to cut out a benefit for The Defendants in the form of the temporary exclusive possession of The Real Property and The Plaintiffs' personal property while utter failing to meet and of her obligations.

191. The Plaintiff were injured financially by the loss of at least fifteen months of rents from 1) The Real Property which was a fully furnished six bedroom and three and ½ bathroom house and 2) Plaintiff's personal property and the eventual total loss of The Real Property and all The Plaintiffs' equity therein when it was foreclosed by the lender.

192. Resultant from The Defendants' Abuses Of Process The Plaintiffs suffered massive losses exceeding one hundred thousand dollars ($100,000).

193. WHEREFORE, The Plaintiffs seeks a Judgement in favor Of The Plaintiffs against Leticia an amount in excess of one hundred thousand dollars ($100,000) plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief This Court or a jury deems just and proper.

# COUNT IV
## MALICIOUS PROSECUTION CRIMINAL

194. All the above averments are incorporated here as if set forth here in their entirety.

195. In *Kelley v. Local Union 249, 544 A. 2d 940, Pa Supreme (1988)* The Pennsylvania

Supreme Court Held as follows;

> *"A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff. Miller v. Pennsylvania R.R. Co., 371 Pa. 308, 313, 89 A.2d 809, 811 (1952)".*

196. The Defendants instituted the criminal proceedings against Hal when they filed false allegations and reports with PSP on June 4th, 2013 that Hal raped/sexually assaulted Jordan.

197. Jordan likely made her false allegations against Hal in retaliation for Hal punishing her and telling her mother about her [Jordan's] cybersex activities with various adult males.

198. Jordan knew better than anyone else in the world, on June 4th, 2013, that Hal had **never** raped, sexually assaulted or did anything inappropriate to her. In fact, Jordan also knew she was a virgin when she made the false allegations against Hal. Thus, Jordan had no probable cause to institute criminal proceedings against Hal.

199. Hal firmly believes Leticia also knew on June 4th, 2013, prior to going to the PSP, that Jordan **had not** been raped or sexually assaulted by Hal and that Jordan was a in fact virgin.

200. Assuming Arguendo that Leticia could not be sure if Jordan was a virgin or not on June 4th, 2013 her lack of knowledge and uncertainty was surely cleared up after Jordan's June 7th, 2013 CAC's Rape Kit Examination of Jordan. Leticia was present at CAC when Jordan was examined and was immediately informed of the results and was provided an unredacted copy

of the June 7th, 2013 CAC Evaluation Report. Thus, Leticia was aware Jordan was a virgin with an intact hymen. The unredacted CAC Evaluation Report is attached to the Confidential Information Form that was submitted contemporaneously with this Complaint.

201. In *Kelly, Supra,* The Pennsylvania Supreme Court also held; *"malice may be inferred by the lack of probable cause"* citing Hugee v. Pennsylvania Railroad Co., 376 Pa. 286 - Pa Supreme (1954). Here the CAC Evaluation Report removed any doubt as to Jordan's virgin status and moreover made clear that Jordan could not have been raped "on a regular basis as he falsely claimed. The jury at the trial came to this conclusion also.

202. Here it is undisputed that three of the charges were dismissed at the Preliminary Hearing and was fully acquitted of all the sixty-six other charges by the jury and trial judge (see Exhibits 5, 6 and 7).

203. Addressing the last element which is malice. As stated above malice can be inferred by the lack of probable cause as is the case here. However, we also have absolute malice here on the part of The Defendants because they both allowed the prosecution against Hal to continue so they both would continue to have a place to live and benefit in other ways.

204. Resultant from The Defendants' Malicious Prosecution Hal suffered massive losses including posting, pay criminal defense attorney fees, paying for expert witnesses and investigators and the loss of his real estate broker license(s) which was Hal's primary source of income. Hal losses exceed two hundred thousand dollars ($200,000).

205. WHEREFORE, The Hal seeks a Judgement in favor Of Hal against The Defendants jointly and severally in an amount in excess of five hundred thousand dollars ($500,000) inclusive of losses interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief This Court or a jury deems just and proper.

## COUNT V
## CIVIL CONSPIRACY – BY THE DEFENDANTS

206.   All the above averments are incorporated here as if set forth here in their entirety.

207.   Upon information and belief, The Defendants, conspired to unlawfully deprive The Plaintiffs of their financial interests, real and personal property and business interests.

208.   Plaintiffs suffered actual damages by virtue of the loss of money, loss wages, loss business opportunities, Loss rents, loss business interests, and the loss of the use of their personal and real property and Hal loss reputation and standing in his social and business circles.

209.   As set for the above in the months leading up to June 2nd, 2013 the relationship between Hal and Leticia was strained in large part because Hal **was not** moving in the direction of marring Leticia and was getting tired of pleading with Leticia to make changes that included her getting a better paying job so she would stop draining Hal's financial resources.

210.   Seeing the end was near Leticia started scheming and thinking of ways to get Hal out of his own home and have a financial windfall at the same time.   Leticia began "Testing The Field" by flirting with other men and testing to see the level of other men's interest in her as evidenced by her venture into the bedroom of Hal's associate in November 2012 and her trips to, supposedly to work, when the trips were really to meet up with another man.

211.   Because Leticia could not afford to pay the bills on her own she began hatching a plan, likely with Jordan, that would allow her to have possession of Hal's residence (i.e. The Real Property) while not have to pay to live there until she could find "another man" to live off of.

212.   Accordingly, when Hal discovered Jordan's cybersex exploits on June 2nd, 2013 and reported them to Leticia instead of reporting her daughter's (Jordan's) illegal and sordid activities with the various adult males to the police and going after the bonified and

documented pedophiles Leticia decided to try to protect Jordan's image and to turn the situation into an opportunity strip Hal of his assets, gain sole possession of The Real Property and get out of paying back the tens of thousands of dollars she owed The Plaintiffs.

213.    Sometime after Hal was evicted from his home, Hal learned that Leticia had reached out to numerous sources to find out how to "Get Hal Out" and gain exclusive possession of The Real Property so she and a male friend could take over The Real Property and she could take over Hal's income tax business and company car

214.    The Defendants conspired with each other to file false allegations against Hal and The Frivolous Couttien Lawsuit to avoid eviction and gain exclusive possession The Real Property.

215.    The Defendants acted together in conspiracy to unlawfully deprive The Plaintiffs of real and personal property and business interests and took affirmative steps towards the conspiracy.

216.    An award of punitive damages is necessary to punish The Defendants and deter them and others like them, from similar conduct in the future that instantly destroys a person's reputation by filing heinous false allegations.

217.    The actions of The Defendants are so outrageous, unconscionable, appalling and harmful as to support and demand an award of substantial punitive damages.

218.    WHEREFORE, The Plaintiffs seek a Judgement in favor of the Defendant against The Defendants jointly and severally in an amount in excess of one hundred thousand dollars ($100,000) plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief This Court or a jury deems just and proper.

WHEREFORE The Plaintiffs respectfully requests The Court award the relief and Judgements The Plaintiffs seek at in accord with each Count of this Complaint or such other relief This Court deems just and proper.

## VERIFICATION

I, Hal Harris, state that the averments contained in the preceding Complaint are true and correct to the best of my knowledge or information and belief. I understand this verification is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

**September 22nd, 2019**
_____
Date

_____
Hal Harris

# Exhibit 1

# Exhibit 1

```
 1    COURT OF COMMON PLEAS OF PIKE COUNTY, PENNSYLVANIA

 2                        CIVIL

 3

 4    LETICIA COUTTIEN,          :
            Plaintiff           :
 5                              :    NO. 1171 - 2013
         vs                     :
 6                              :
      TERRENCE COLBERT and      :
      HAL HARRIS,               :
 7          Defendants          :

 8    : : : : : : : : : : : : : : : : : : : : : : : :

 9

10      The above-captioned matter scheduled for hearing

11    at the Pike County Courthouse, Milford, Pennsylvania

12    on January 31, 2014.

13

14    BEFORE:              HON. GREGORY H. CHELAK

15

16    APPEARANCES:

17

18    FOR PLAINTIFF:       MATTHEW GALASSO, ESQUIRE

19    FOR DEFENDANTS:      CHRISTOPHER BROWN, ESQUIRE

20

21

22    REPORTED BY:         ROBYN L. PAVLOVSKY, FSR
                           COURT REPORTER

23

24

25
```

*(Clerk's stamp:)* ENTERED FOR RECORD PIKE COUNTY, PA. 2014 FEB -3 AM 11:49 OFFICE OF PROTHONOTARY CLERK OF COURTS

1          <u>STIPULATION & ORDER</u>

2          THE COURT:  Good afternoon, ladies

3     around gentlemen.  We have the matter of

4     Leticia Couttien versus Terrence Colbert and

5     Hal Harris scheduled for hearing, Attorney

6     Galasso for the plaintiff and Attorney Brown

7     for the defendants.  Counsel, are you ready to

8     proceed?

9          MR. GALASSO:  Yes, Your Honor.  Your

10    Honor, I'm pleased to report that the parties

11    have reached an agreement, the terms of which

12    I'd like to place on the record at this time.

13         THE COURT:  You may proceed.

14         MR. GALASSO:  It is agreed that the

15    plaintiff, Leticia Couttien, shall continue to

16    have exclusive possession of the residence

17    that's currently at issue.

18         No. 2.  Within fourteen days plaintiff

19    shall have an appraisal performed costs to be

20    borne by the plaintiff of the property at issue

21    with a copy of said appraisal being provided to

22    opposing counsel for the defendants.

23         No. 3.  Plaintiff shall within thirty

24    days have a mortgage application submitted in

25    order to determine whether or not she qualifies

1    for a mortgage on the property.

2         No. 4.  Any equity contained within the

3    property based upon that appraisal shall be

4    divided one-third to the plaintiff and

5    one-third to Terrence Colbert and one-third to

6    Hal Harris.  That closing shall be scheduled

7    within sixty days of today's date.  In the

8    event a closing is scheduled, the property may

9    not be listed for sale.

10        In the event a closing is not scheduled

11   within sixty days, the property shall be listed

12   for sale and placed on the MLS.

13        No. 5.  That defendant, Hal Harris,

14   shall not be entitled to show the property as

15   an agent.  However, he may be permitted to

16   participate as a broker so long as it is not an

17   exclusive listing.

18        No. 6.  At the time of closing, the

19   defendant, Terrence Colbert, shall execute a

20   deed back to he and Leticia Couttien.  I

21   believe that's the extent of the agreement.

22        THE COURT:  Okay.  Attorney Brown?

23        MR. BROWN:  Yeah, a couple of issues and

24   I don't think any of these are going to kill

25   the stipulation.

| From: | web@pamb.uscourts.gov on behalf of PAMB Web |
| --- | --- |
| To: | PAMBml_fax |
| Subject: | EDSS filing from Leticia R Couttien for on Tuesday, June 21, 2022 - 14:38 |
| Date: | Tuesday, June 21, 2022 2:38:25 PM |

Submitted on Tuesday, June 21, 2022 - 14:38
Submitted by user: Anonymous
Submitted values are:

Filer's Name: Leticia R Couttien
Debtor's name (if different):
Filer's EMail Address: lcouttien@gmail.com
Filer's Phone Number: 6462870492
Case number (if known): 5:14-bk-02262
    ==Documents==
    Document 1:

https://www.pamb.uscourts.gov/system/files/webform/edss/Email%20Requesting%20Money.pdf
        Document description: Email requesting money - 2
     ==More Documents==
        Document 2:


https://www.pamb.uscourts.gov/system/files/webform/edss/Complaint%201241-2019-1.1.pdf
        Document 2 description: Complaint 2019 -1
        Document 3:


https://www.pamb.uscourts.gov/system/files/webform/edss/Complaint%201241-2019-1.2.pdf
        Document 3 description: Complaint 2019 -2
        Document 4:


https://www.pamb.uscourts.gov/system/files/webform/edss/Complaint%201241-2019-1.3.pdf
        Document 4 description: Complaint 2019 - 3
        Document 5:


https://www.pamb.uscourts.gov/system/files/webform/edss/Complaint%201241-2019%201.4.pdf
        Document 5 description: Complaint 2019- 4



By entering my name in the box below, I affirm that I am intending to sign
this form with my signature and consent to use this electronic form.: Leticia
R Couttien