United States Bankruptcy Court

Middle District of Pennsylvania

| | |
|---|---|
| In re: | Case No. 14-02262-HWV |
| Leticia R. Couttien | Chapter 7 |
| Debtor | |

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0314-5 | User: AutoDocke | Page 1 of 2 |
| Date Rcvd: Mar 01, 2023 | Form ID: pdf010 | Total Noticed: 2 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

\+          Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Mar 03, 2023:**

| Recip ID | Recipient Name and Address |
|---|---|
| 4489749 | + HAL HARRIS, 315 Keswick Avenue, Bushkill, PA 18324-8141 |
| 4489754 | + TERRENCE COLBERT, 218 E 115th Street #8A, New York, NY 10029-2131 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

NONE

# NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 03, 2023            Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on March 1, 2023 at the address(es) listed below:

| Name | Email Address |
|---|---|
| Andrew Michael Rongaus | on behalf of Miscellaneous Participant PA State Police arongaus@pa.gov |
| J. Zac Christman | on behalf of Defendant Leticia R Couttien jchristman@newmanwilliams.com office@fisherchristman.com |
| J. Zac Christman | on behalf of Debtor 1 Leticia R. Couttien jchristman@newmanwilliams.com office@fisherchristman.com |
| Joshua I Goldman | on behalf of Creditor Lakeview Loan Servicing LLC josh.goldman@padgettlawgroup.com, angelica.reyes@padgettlawgroup.com |
| Leon P Haller | on behalf of Miscellaneous Participant Metropolitan Edison Company dba Met-Ed lhaller@pkh.com dmaurer@pkh.com;mgutshall@pkh.com;khousman@pkh.com |

Lisa A Rynard
    on behalf of Miscellaneous Participant Metropolitan Edison Company dba Met-Ed larynard@larynardlaw.com

Thomas I Puleo
    on behalf of Creditor Lakeview Loan Servicing LLC tpuleo@kmllawgroup.com, bkgroup@kmllawgroup.com

United States Trustee
    ustpregion03.ha.ecf@usdoj.gov

Vincent Rubino
    on behalf of Debtor 1 Leticia R. Couttien lhochmuth@newmanwilliams.com;mdaniels@newmanwilliams.com;lbeaton@newmanwilliams.com;rkidwell@newmanwilliams.com;swiggins@newmanwilliams.com

William E. Craig
    on behalf of Creditor Nissan Motor Acceptance Corporation servicer for Nissan-Infiniti, LT ecfmail@mortoncraig.com, mortoncraigecf@gmail.com

TOTAL: 10

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 5:14-bk-02262-HWV |
| LETICIA R. COUTTIEN, | : | |
| | : | |
| Debtor, | : | |
| | : | |
| LETICIA R. COUTTIEN, | : | |
| | : | Chapter 7 |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| HAL H. HARRIS and TERRENCE A. COLBERT, | : | |
| | : | |
| | : | Nature of Proceeding: Motion for Contempt |
| Respondents. | : | And Request for Injunctive Relief |

**OPINION**

This matter comes before the Court by way of a Motion for Contempt and Request for Injunctive Relief filed by the Debtor, Leticia R. Couttien ("Couttien"), Doc. 105, in which she seeks a determination that Respondents Hal H. Harris ("Harris") and Terrance A. Colbert ("Colbert") are in contempt of the discharge order entered in the above-captioned case. Couttien also requests the entry of an order requiring Harris and Colbert to cease all collection activity for debts she alleges were incurred pre-petition. For the following reasons, the Court finds that Harris and Colbert have violated the discharge injunction; however, the Court will not hold Harris and Colbert in contempt.

I. **JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I)–(J). *See Mesabi Metallics Co., LLC v. B. Riley FBR, Inc.* (*In re Essar Steel Minn., LLC*), 47 F.4th 193, 199 (3d Cir. 2022) (collecting cases).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court notes at the outset that both the personal and litigation histories between these parties is lengthy. At some point prior to 2013, Harris and Couttien commenced a romantic relationship that lasted nearly ten years. (AP Doc. 1, p. 2.)[1] During at least part of this time, Harris and Couttien resided together at 440 Underhill Drive, Tamiment, PA 18371 (the "Real Property"). (*Id.*) Couttien co-owned the Real Property with Colbert, a long-time friend and business partner of Harris. (*Id.*) However, toward the end of Harris and Couttien's relationship, on April 8, 2013, ownership of the Real Property was transferred solely to Colbert, although Couttien continued to live in the residence.[2] (*Id.*) A few months later, in June 2013, Harris and Couttien ended their relationship, and Couttien received a Protection from Abuse Order (the "PFA") against Harris. (*Id.*) Pursuant to the PFA, Harris was ordered to vacate the Real Property and leave behind most of his personal belongings. (*Id.* at 3.)

In reciprocal fashion, on June 25, 2013, Colbert served Couttien with a "Notice to Quit," informing her that she would be evicted from the Real Property in 30 days if she did not vacate the premises. (*Id.*) On July 25, 2013, in an apparent attempt to forestall the eviction process, Couttien commenced a civil action in the Pike County Court of Common Pleas against Harris and Colbert, (the "2013 State Court Action"),[3] asserting various causes of action with respect to the Real Property and requesting partition and exclusive possession of the Real Property. (*Id.*) On September 3, 2013, the parties entered into a stipulation (the "2013 Stipulation"), whereby

---

[1] Documents appearing on the docket for adversary proceeding 5:14-ap-00629-JJT will hereafter be cited as "AP Doc." Documents appearing on the docket of bankruptcy case 5:14-bk-02262-HVW will hereafter be cited as "BK Doc."

[2] Though ultimately irrelevant to the Court's ruling in this case, it is not clear to the Court how or why this transfer occurred.

[3] The 2013 State Court Action is located at docket number 1171-CV-2013.

2

Couttien was granted temporary exclusive possession of the Real Property. (AP Doc. 1, Ex. C-1.) Thereafter, on October 30, 2013, Harris and Colbert filed counterclaims (the "2013 Counterclaims") against Couttien in the 2013 State Court Action. (Tr. Ex. J2.) The 2013 Counterclaims sought replevin of the personal property that remained in the Real Property when Harris vacated the premises; ejectment of Couttien from the Real Property; and rent during the time that Couttien remained in exclusive possession of the Real Property. (*Id.*)

On January 31, 2014, the parties entered into a second stipulation in the 2013 State Court Action (the "2014 Stipulation," collectively, with the 2013 Stipulation, the "State Court Stipulations") that extended Couttien's temporary exclusive possession of the Real Property in exchange for maintaining all homeownership expenses and getting the Real Property appraised within fourteen days. (Tr. Ex. R3.) The 2014 Stipulation also provided Couttien with, essentially, a sixty-day right of first refusal to purchase the Real Property from Colbert. (*Id.*) In the event that Couttien did not opt to purchase the Real Property, the 2014 Stipulation indicated that the Real Property would be listed for sale, with the proceeds divided two thirds in favor of Colbert, and one third in favor of Couttien. (*Id.*) Importantly, while the 2014 Stipulation settled all of Couttien's claims against Harris and Colbert in the 2013 State Court Action, it did not resolve the 2013 Counterclaims. (*Id.*)

On April 7, 2014, Harris and Colbert filed a petition for contempt against Couttien in the 2013 State Court Action for failure to abide by the terms of the State Court Stipulations.[4] (Tr. Ex. R4.) Couttien filed an answer to the petition on April 29, 2014. (Tr. Ex. R5.) While a

---

[4] Specifically, Harris and Colbert alleged that Couttien: (1) failed to obtain an appraisal within the time set forth in the 2014 Stipulation; (2) obtained a late appraisal that did not meet "basic standards of professional appraisal practice;" (3) failed to provide Harris and Colbert with a timely mortgage application; and (4) failed to maintain all homeownership expenses. (*Id.*) Accordingly, the petition sought an order (1) directing turnover of the Real Property to Colbert; (2) barring Couttien from removing any personal property belonging to Harris or Colbert from the Real Property; and (3) directing Couttien to pay Harris and Colbert for all outstanding costs associated with the Real Property during her exclusive possession, among other requested relief. (*Id.*)

hearing was scheduled on the petition for July 1, 2014, Couttien filed the instant bankruptcy proceeding on May 13, 2014, which stayed all proceedings against her, including the 2013 State Court Action. (Tr. Ex. R6; BK Doc. 1.)

On November 24, 2014, Harris and Colbert filed an adversary proceeding in this Court (the "Adversary Proceeding")[5] which asserted claims against Couttien that largely mirrored their claims in the 2013 State Court Action: that Couttien converted certain personal property owned by Harris and Colbert, and that she failed to abide by the terms of the State Court Stipulations. (AP Docs. 1, 27.) The adversary complaint also alleged that Couttien's bankruptcy schedules contained material misrepresentations and omissions. (*Id.*) Accordingly, Harris and Colbert sought a finding that certain debts were nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(a) & (b) and 11 U.S.C. § 523(a)(19)(B)(i), as well as denial of Couttien's discharge in its entirety under 11 U.S.C. § 727(a)(2)(a) & (b) and 11 U.S.C. § 727(a)(4)(A) & (B). (*Id.*)

After more than three years of contentious litigation in the Adversary Proceeding, the parties entered into a stipulation in settlement of all pending claims in the Adversary Proceeding (the "Adversary Stipulation"). (AP Doc. 196.) In pertinent part, the Adversary Stipulation provided for (1) the return of certain personal property to Harris; (2) payment of $10,000 to Harris; and (3) the entry of a $5,000 nondischargeable judgment, payable to Colbert in equal monthly instalments of $75 per month beginning on March 25, 2018.[6] (*Id.*) The Stipulation also included a provision that stated:

> "It is expressly understood and agreed that this Stipulation only resolves the present Adversary Proceeding and the personal liability of Couttien for debts and/or

---

[5] This adversary proceeding was overseen by the undersigned's predecessor at docket number 5:14-ap-00269-JJT.

[6] The Adversary Stipulation provided for the nondischargeable judgment to be increased to $22,500 if, following a hearing, the Court found that Couttien had not substantially complied with the other terms of the Adversary Stipulation. (AP Doc. 196, p. 3.)

4

obligations incurred prior to May 13, 2014. This Stipulation does not resolve the currently pending and/or stayed civil cases in the Court of Common Pleas of Pike County, Pennsylvania, involving the Parties to this stipulation."

(AP Doc. 208.)

Following a final hearing at which the Court determined that Couttien had complied with all material provisions of the Adversary Stipulation, the Court entered an Order granting Colbert a nondischargeable judgment in the amount of $5,000 on March 9, 2018. (AP Doc. 208.) This Order served to close the Adversary Proceeding. (Doc. 210.) Thereafter, Couttien received a discharge in the instant bankruptcy case on June 26, 2018. (BK Doc. 84.)

On April 4, 2019, Harris and Colbert filed a praecipe to relist their previously stayed petition for contempt in the 2013 State Court Action. (Tr. Ex. R13.) The Pike County Court of Common Pleas scheduled a hearing on the petition for contempt, but Couttien did not appear at this hearing, resulting in a contempt finding that she had failed to abide by the terms of the 2014 Stipulation.[7] (Tr. Ex. R14.) Thereafter, on June 11, 2019, the State Court conducted a sanctions hearing, at which Couttien was present. (Tr. Ex. R15.) This hearing culminated in an order awarding $1,196.26 to Harris and Colbert jointly as reimbursement for travel, printing, mailing, and court costs, and $1,750 to Harris individually as reimbursement for lost earnings.[8] (Tr. Ex. D3.)

On September 23, 2019, while the 2013 State Court Action remained pending, Harris and Colbert commenced another civil action against Couttien and her daughter in the Pike County Court of Common Pleas, (the "2019 State Court Action")[9] asserting various causes of action,

---

[7] Couttien claimed that she did not appear at the hearing on the petition for contempt because she did not receive notice of the hearing. (Tr. Ex. D3.)

[8] The State Court also found that the rest of Harris and Colbert's alleged damages were meritless and were otherwise not related to Couttien's failure to abide by the terms of the 2014 Stipulation. (Tr. Ex. R4.)

[9] The 2019 State Court Action is located at docket number 1241-CV-2019.

5

including malicious use of process in the 2013 State Court Action, the bankruptcy proceeding, and a Children and Youth Services proceeding; abuse of process; malicious criminal prosecution; and civil conspiracy. (Tr. Ex. J3.) The 2019 State Court Action appears to remain pending. (Tr. Ex. R23.)

On September 4, 2020, Harris sent an email to Couttien's counsel in the 2013 State Court Action attempting to settle the 2013 Counterclaims for $250,000. (Tr. Ex. D2.) When Couttien's counsel did not respond to the request, Harris sent a follow-up email on October 7, 2020, again requesting $250,000 to settle the 2013 Counterclaims. (*Id.*) Rather than respond to these settlement requests, on January 20, 2022, Couttien filed a motion to reopen her bankruptcy case based on an alleged violation of the discharge injunction. (BK Doc. 89.) The Court granted this motion on February 8, 2022. (BK Doc. 96.)

On April 25, 2022, Couttien filed the instant motion for contempt and request for injunctive relief, seeking a determination that Harris and Colbert have violated the discharge injunction by renewing their collection efforts against her for debts that arose pre-petition in the 2013 State Court Action, including by sending the September 4, 2020 and October 7, 2020 emails seeking to settle the 2013 Counterclaims. (BK Doc. 105.) Harris and Colbert filed a joint answer on May 17, 2022. (BK Doc. 108.) Thereafter, the Court held three non-consecutive days of evidentiary hearings on the motion on June 22, 2022, August 31, 2022, and September 7, 2022. (BK Docs. 124, 134, 136.) Following the evidentiary hearings, the Court took the matter under advisement. After reviewing the pleadings and record, the Court is prepared to rule.

III. ANALYSIS

In this case, Couttien requests that Harris and Colbert be held in contempt of the discharge order and that an order be entered specifically staying all proceedings in the 2013 and

6

2019 State Court Actions to the extent that they seek collection of any debt covered by the discharge order. In support of her motion, Couttien asserts that the Adversary Stipulation, which resolved the Adversary Proceeding in the above-captioned case, fully determined the extent of her personal liability for all debts owed prior to May 13, 2014, including the causes of action asserted against her in the 2013 State Court Proceeding. (BK Doc. 105.)

In response, Harris and Colbert assert that: (1) the Adversary Stipulation expressly allowed Harris and Colbert to maintain the 2013 State Court Action against Couttien; (2) that the debts Harris and Colbert now seek to collect against Couttien had not been "incurred" at the time Couttien filed for bankruptcy because judgment had not yet been entered on these debts; and (3) notwithstanding the Adversary Stipulation, Couttien's retention of Harris and Colbert's personal property post-petition constitutes a continued tort, which carries post-petition liability that was not discharged in Couttien's bankruptcy. (BK Doc. 137, pp. 61, 65, 72.)

The Court will address these issues in the order presented.

### A. Harris and Colbert have violated the discharge injunction because the State Court Actions seek recovery of discharged debts.

Initially, the Court notes that "[a]t the conclusion of a bankruptcy proceeding, a bankruptcy court typically enters an order releasing the debtor from liability for most prebankruptcy debts." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019). "This order, known as a discharge order, bars creditors from attempting to collect any debt covered by the order." *Taggart*, 139 S. Ct. at 1799. In addition, the discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2).

7

Certain debts, however, are not necessarily subject to discharge upon entry of the discharge order. *See* 11 U.S.C. § 523(a). For instance, debts of the kind specified in Section 523(a)(2), (4), or (6) are discharged unless the Court expressly determines that the debt is excepted from discharge. 11 U.S.C. § 523(c). The Court may make such a determination via adversary proceeding. 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c); Fed R. Bankr. P. 7001(6).

In this case, before the entry of the discharge order, Harris and Colbert instituted the Adversary Proceeding to challenge the dischargeability of various debts under, among other sections, 11 U.S.C. § 523(a)(2).[10] These challenged debts largely arose, according to the adversary complaint, from the same set of facts as the 2013 State Court Action. The Adversary Proceeding was resolved by the Adversary Stipulation, which resulted in the entry of a nondischargeable judgment in the amount of $5,000. (AP Docs. 196, 208.) Thus, Harris and Colbert's claims in the Adversary Proceeding, which largely mirrored their claims from the 2013 State Court Action, were reduced to $5,000 by operation of the nondischargeable judgment, the discharge order, and Section 523(c). Because the Court did not expressly make a determination regarding nondischargeability of debt other than the $5,000 judgment entered on March 9, 2018, the Court finds that any attempt to collect debts other than this $5,000 is violative of the discharge injunction.[11]

---

[10] Specifically, three counts of the adversary complaint challenged dischargeability of debts under Section 523(a)(2)(A) and (B); one count challenged dischargeability of debts under Section 523(a)(19)(B)(i); and the remaining two counts sought a denial of discharge entirely pursuant to Section 727(a)(4).

[11] To the extent that either Harris or Colbert seek to revoke the discharge entered in this case, they are time-barred from doing so. Indeed, pursuant to 11 U.S.C. § 727(e), creditors such as Harris and Colbert may only request revocation of a Debtor's discharge under two circumstances. For requests to revoke a discharge order that was obtained through fraud of the Debtor, creditors have one year to raise this challenge after the discharge order is entered. 11 U.S.C. § 727(e)(1). Similarly, for requests to revoke a discharge order when the Debtor has "acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such

Indeed, the Court finds that Harris and Colbert have violated the discharge order in this case by soliciting funds from Couttien to settle the 2013 State Court Action for amounts that far exceed the $5,000 judgment that survived her bankruptcy discharge. Specifically, on September 4, 2020 and October 7, 2020, Harris and Colbert sent emails to Couttien's state court counsel in which they sought $250,000 to settle their pre-petition 2013 Counterclaims against her. (Tr. Exs. D1, D2.) These 2013 Counterclaims, with the exception of the $5,000 undischarged judgment, were largely litigated and resolved by virtue of the Adversary Proceeding and the Adversary Stipulation, and to the extent not litigated, were otherwise discharged by virtue of the discharge order and Section 523(c).

In short, to the extent that Harris and Colbert are continuing to litigate and otherwise attempting to solicit funds from Couttien for claims that have already been litigated and/or discharged by the Adversary Stipulation, the discharge order, and Section 523(c), other than the $5,000 undischarged judgment as described above, the discharge injunction prohibits this activity.[12]

Notwithstanding the above, the Court turns to Harris and Colbert's arguments as to why their actions do not constitute discharge violations.

---

property to the trustee[,]" or if the Debtor has refused "to obey any lawful order of the court," creditors have one year after the discharge order is entered or one year after the case is closed, whichever is later, to raise this challenge. 11 U.S.C. § 727(e)(2). In either event, Harris and Colbert are well outside of the one year available for them to challenge Couttien's discharge since the discharge order and final decree were entered on June 26, 2018 in this case. (BK Docs. 84, 85.)

[12] To be clear, Colbert is not precluded from attempting to collect unpaid portions of the undischarged $5,000 judgment from Couttien. Indeed, Couttien admits in her motion to reopen this case that there are payments outstanding on this $5,000 undischarged debt. (Doc. 89, p. 1.)

9

1. **The Adversary Stipulation does not provide an independent basis for continuing collection efforts against Couttien for pre-petition debt exceeding $5,000 in the 2013 State Court Action.**

Harris and Colbert argue that, notwithstanding the $5,000 undischarged judgment, paragraph 15 of the Adversary Stipulation expressly allows them to continue collection efforts against Couttien in the State Court Actions. Paragraph 15 of the Stipulation states:

> "It is expressly understood and agreed that this Stipulation only resolves the present Adversary Proceeding and the personal liability of Couttien for debts and/or obligations incurred prior to May 13, 2014. This Stipulation does not resolve the currently pending and/or stayed civil cases in the Court of Common Pleas of Pike County, Pennsylvania, involving the Parties to this stipulation."

(AP Doc. 208.)

To the extent Harris and Colbert rely on paragraph 15 of the Adversary Stipulation as a basis for asserting claims for personal liability against Couttien for liabilities incurred prior to May 13, 2014, they are incorrect. As stated above, claims brought under Section 523(a)(2) are discharged unless the Court determines that the debt is excepted from discharge pursuant to Section 523(c). 11 U.S.C. § 523(c). The Court entered a nondischargeable judgment in the amount of $5,000 in favor of Colbert but did not make any other express determination that other sums were nondischargeable. (AP Doc. 208.) Thus, by operation of Section 523(c), Couttien can only be personally liable to Colbert for debts pre-dating May 13, 2014 in the amount of $5,000 in accordance with the undischarged judgment. Therefore, the Adversary Stipulation does not provide a basis for Harris or Colbert to continue to pursue Couttien for any liability pre-dating May 13, 2014, outside of the $5,000 undischarged judgment.

Case 5:14-bk-02262-HWV    Doc 149    Filed 03/03/23    Entered 03/04/23 00:25:15    Desc
Imaged Certificate of Notice    Page 12 of 19

### 2. The underlying debt for which Harris and Colbert seek recovery in their 2013 Counterclaims was "incurred" pre-petition, and therefore was discharged.

During the hearings on the instant motion for contempt, Harris and Colbert argued that they should be permitted to continue their collection efforts against Couttien in the 2013 State Court Action for replevin because Couttien's alleged debt had not been "incurred" since they did not possess a judgment against Couttien as of May 13, 2014. (BK Doc. 137, p. 65.) Construed generously, Harris and Colbert argue that their cause of action had not arisen as of the petition date, and therefore, the liability stemming therefrom was not subject to the discharge order.

As the Court has already noted, the discharge order "bars creditors from attempting to collect any debt covered by the order." *Taggart*, 139 S. Ct. at 1799. Debts covered by the order include instances in which an individual is "exposed pre-petition to . . . conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *In re Hyman*, No. 11-852, 2014 WL 199890, at *5 (E.D. Pa. Jan. 17, 2014) (citing *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010)). In other words, the discharge injunction applies to claims or causes of action that have arisen but have not yet been liquidated at the time the petition was filed. 11 U.S.C. § 727(b).

Here, Harris and Colbert filed their 2013 Counterclaims on October 30, 2013. (Tr. Ex. J2.) Thus, Harris and Colbert must have believed they were injured by Couttien's conduct as of that date. Indeed, all of the actions complained of in the 2013 Counterclaims are alleged to have occurred prior to the petition date, May 13, 2014. (*Id.*) Therefore, the mere fact that judgment had not been entered against Couttien at the time she filed for bankruptcy is not persuasive to the Court and does not provide an independent basis for asserting liability against Couttien for any alleged actions pre-dating May 13, 2014.

Even though Harris and Colbert's claims had not been reduced to a judgment by the time the petition was filed, they were still subject to discharge in Couttien's bankruptcy, absent some determination by the Court that the debts were nondischargeable. The Court notes that Harris and Colbert actively litigated their dischargeability challenges as well as the substance of the 2013 Counterclaims in the Adversary Proceeding in this case which culminated in the Adversary Stipulation and a nondischargeable judgment for $5,000, as well as other relief sought by Harris and Colbert. It is therefore clear to the Court that Harris and Colbert were both aware of the facts giving rise to their claims against Couttien such that these claims had arisen by the date of the petition, and certainly by the time of the Adversary Proceeding. There is accordingly no basis to conclude that anything other than the $5,000 undischarged judgment survived Couttien's bankruptcy discharge.

### 3. The continuing tort doctrine does not provide a basis for asserting post-discharge claims against Couttien for pre-petition debts.

Finally, Harris and Colbert assert that they are permitted to maintain their collection efforts against Couttien based on a continuing tort theory because she remains in possession of their personal property post-petition. (BK Doc. 137, pp. 72, 111.) In other words, Harris and Colbert appear to believe that they have a new cause of action each day that Couttien retains possession of their personal property until she returns these items. (*Id.*) Harris and Colbert misapprehend the continuing tort doctrine's applicability.

The continuing tort doctrine is a statute of limitations doctrine. *See generally Brillhart v. Sharp*, No. 4:CV-07-1121, 2008 WL 2857713 (M.D. Pa. July 21, 2008); *Piccolini v. Simon's Wrecking*, 686 F. Supp. 1063 (M.D. Pa. 1988); *Sustrik v. Jones & Laughlin Steel Corp.*, 197 A.2d 44 (Pa. 1964). The doctrine stands for the proposition that "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period" and enables

12

courts to "grant relief for . . . earlier related acts that would otherwise be time barred." *Carroll v. Fein*, 2018 WL 3416390, at *5 (E.D. Pa. July 13, 2018) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). As implied by the name, the doctrine applies to continuing or continuous torts. These torts consist of injuries "inflicted over a period of time;" i.e., "wrongful conduct that is repeated until desisted[.]" *CBG Occupational Therapy Inc. v. Bala Nursing & Ret. Ctr.*, 2005 WL 280838, at *3 (Pa. Com. Pl. Jan. 27, 2005) (internal quotation marks omitted). "A continuing tort sufficient to toll the statute of limitations is occasioned by continual unlawful acts, *not by continual ill effects from an original violation*." *Id.* (emphasis in original; internal quotation marks omitted).

In this case, the 2013 Counterclaims were based on Couttien's alleged conversion of Harris and Colbert's personal property. Conversion is a finite tort that is complete the moment that a person is permanently deprived of their rights to their property. *See Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp.*, 579 Pa. 275, 289 (2004) ("A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."). In other words, one cannot take the same item twice from the same person while retaining uninterrupted possession of the item. Harris and Colbert allege that Couttien converted certain personal property belonging to Harris and Colbert before she filed for bankruptcy on May 13, 2014, as evidenced by the 2013 Counterclaims. Therefore, the alleged conversion was complete before the petition was filed. Contrary to Harris and Colbert's belief, Couttien's retention of their personal property does not transform their cause of action for conversion into a continuous tort. Moreover, their allegation that they continue to experience ill effects resulting from Couttien's alleged retention of their personal property does not give rise to a new cause of action on a post-

13

Case 5:14-bk-02262-HWV    Doc 149    Filed 03/03/23    Entered 03/04/23 00:25:15    Desc
Imaged Certificate of Notice    Page 15 of 19

petition basis.  As already explained, Harris and Colbert's cause of action for conversion accrued before Couttien filed for bankruptcy.

As such, the continuing tort doctrine is facially inapplicable to the instant case both because it does not apply to finite torts, such as conversion, and because it does not provide an independent basis to assert a pre-petition liability on a post-petition basis.  Therefore, this argument is not persuasive to the Court as a means to find that Harris and Colbert have not violated the discharge injunction.

Having concluded that none of Harris or Colbert's arguments are persuasive, the Court maintains its finding that Harris and Colbert have violated the discharge injunction by continuing collection efforts with respect to pre-petition debts.  The Court next turns to the question of whether Harris and Colbert should be held in contempt for this violation.

### B. The Court will not hold Harris or Colbert in contempt for violation of the discharge injunction.

While the bankruptcy code does not provide a statutory private right of action for violation of the discharge injunction, it is well settled that the "discharge injunction is enforceable through a contempt motion invoked pursuant to 11 U.S.C. § 105." *In re Bernhard*, 639 B.R. 117, 129 (Bankr. E.D. Pa. 2022) (citing *In re Meyers*, 344 B.R. 61, 64–65 (Bankr. E.D. Pa. 2006) (collecting cases)).  To succeed on a motion for contempt for violation of the discharge injunction, the debtor must show "(1) a discharge order has been entered (discharging the debt); (2) the defendant was aware of the discharge order; and (3) collection efforts continued, nevertheless." *Id.* (citing *In re Englert*, 495 B.R. 266, 271 (Bankr. W.D. Pa. 2013)).

However, even where the above factors have been met, courts may only hold a creditor in contempt if there is "no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1801.  In other words, a creditor may be held in contempt if

14

"the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802.

While it is undisputed that a discharge order was entered in this case on June 26, 2018, and that Harris and Colbert were aware that this order had been entered, the Court will decline to hold them in contempt because the Court finds that there was, at least until the writing of this opinion, a "fair ground of doubt" as to the scope of the discharge order as it relates to the debt at issue. *Id.* at 1801. The absence of experienced bankruptcy counsel at key points of the litigation between the parties is important to the Court's determination here.

As previously noted, Harris, Colbert, and Couttien have each opted to proceed on a *pro se* basis throughout most of the proceedings before this Court. Indeed, while Couttien had the benefit of legal representation at the time that the Adversary Stipulation was drafted and executed, Harris and Colbert have represented themselves throughout all their litigation efforts against Couttien. As frequently stated by the Court throughout this proceeding, self-representation, while permissible, is often accompanied by unforeseen pitfalls. Indeed, one such pitfall is best illustrated by the fact that paragraph 15 of the parties' Adversary Stipulation, which has given rise to Harris and Colbert's misplaced beliefs surrounding the scope of Couttien's bankruptcy discharge, contains inherently contradictory provisions.[13] (BK Doc. 137, p. 61; AP Doc. 208.) Such inconsistencies would likely not exist in the event that these parties had been represented by counsel at the time they entered into the Adversary Stipulation.

---

[13] Specifically, the following sentences cannot both be enforced as drafted: "It is expressly understood and agreed that this Stipulation only resolves the present Adversary Proceeding and the personal liability of Couttien for debts and/or obligations incurred prior to May 13, 2014. This Stipulation does not resolve the currently pending and/or stayed civil cases in the Court of Common Pleas of Pike County, Pennsylvania, involving the Parties to this stipulation." (AP Doc. 208.)

15

Moreover, the misunderstanding regarding the construction of paragraph 15 would likely not exist if the parties had been consistently represented by counsel. However, the Court acknowledges the right of parties to self-represent and the reality that Harris and Colbert do not have the benefit of legal training or of legal counsel in this case. Based on testimony from Harris and Colbert during the evidentiary hearings in this matter regarding their understanding of the Adversary Stipulation, which the Court found credible and sincere, the Court finds that Harris and Colbert's construction of the Adversary Stipulation, though ultimately flawed, was not objectively unreasonable under the circumstances of this case. Therefore, the Court will decline to hold Harris and Colbert in contempt for violation of the discharge injunction.[14]

### C. Injunction against further proceedings

Stated succinctly, Harris and Colbert must immediately cease collection activities for any discharged debt as set forth in this opinion. This ruling does not prohibit Harris and/or Colbert from asserting claims within the context of the State Court Actions to the extent that Harris and Colbert have a claim for an undischarged debt. Whether any remining claims or counterclaims in the State Court Actions arose post-petition is a question best addressed by the state court in the context of the respective lawsuits.

---

[14] Notwithstanding this finding, should Harris and Colbert continue to violate the discharge injunction as set forth in this opinion, the Court will not afford the same deference in the event that an appropriate motion is brought seeking contempt in a future proceeding.

IV. CONCLUSION

For the foregoing reasons, the Court finds that Respondents have violated the discharge injunction. However, the Court will not hold Respondents in contempt as requested by the Debtor.

An appropriate Order will follow.

By the Court,

*(signature)*

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: March 1, 2023